BARR LABORATORIES, INC., Plaintiff,

v.

Patricia Roberts HARRIS et
al., Defendants.

Civ. A. No. 79–3150.

United States District Court,
District of Columbia.

Jan. 21, 1980.

Joel E. Hoffman, D. Michal Freedman,
James. H. Davis, Washington, D. C., for
plaintiff.

Patricia J. Kenney, Spec. Asst. U. S.
Atty., Washington, D. C., for defendants.

MEMORANDUM AND ORDER

GESELL, District Judge.

Plaintiff Barr Laboratories, Inc. ("Barr"),
a small corporation engaged in the manu-
facture and sale of generic prescription
drugs, brings this action to secure declara-
tory and injunctive relief from defendants,
who are charged with administering the
Food and Drug Administration ("FDA").
Plaintiff seeks an order requiring FDA to
approve for marketing certain batches of
erythromycin estolate ("ee") capsules sub-
mitted by plaintiff to the agency on July
19, 1979, and any additional batches of that
antibiotic submitted by plaintiff in the fu-
ture and found to conform to existing regu-
latory standards, 21 C.F.R. § 452.115b
(1979). Barr claims that FDA is not autho-
rized to withhold certification, and that
even if the agency has such authority the

exercise of it in this instance is arbitrary, capricious, and without factual justification in the record.

Having attempted unsuccessfully to resolve its concerns at the agency level, plaintiff is now properly before this Court. 5 U.S.C. §§ 702–06 (1976). It initially moved for a preliminary injunction, and argument from both sides was heard on December 7, 1979. In an effort to assure expedited treatment and minimize possible injury to its business, plaintiff filed a motion for summary judgment immediately following oral argument. The Court denied the motion for a preliminary injunction while anticipating a fuller treatment of the legal issues through the summary judgment process. Defendants have cross-moved for summary judgment, the issues have been fully briefed, and the Court finds there are no matters of material fact in dispute.

The essential facts, unchanged since the Court's Memorandum and Order of December 13, 1979, are as follows:

The antibiotic erythromycin estolate has been marketed in the United States since 1958. A regulation or "monograph" approving its safety and effectiveness was promulgated in 1971. The principal manufacturer and marketer of "ee" is Eli Lilly & Co. The drug also is manufactured and marketed by Danbury Pharmacal, Inc.

In January, 1979, plaintiff sought certificates of approval from FDA for batches of "ee" capsules, submitting appropriate forms pursuant to 21 U.S.C. § 357 (1976) and 21 C.F.R. § 431 (1979). After receiving suggestions and responses from agency officials, plaintiff refined its production processes and tendered an improved batch for approval in July, 1979. It is not disputed that this batch met prevailing standards of safety and efficacy, yet it was not certified.

Instead, on August 29, 1979, FDA initiated steps with a view to revoking the prior approval of "ee" because of its conclusion in light of new evidence that "ee" no longer met applicable safety standards. The drug had long been known to produce certain adverse side effects, and newer scientific data indicated that "ee" was no more effective than other, safer drugs. FDA unsuccessfully attempted to secure voluntary discontinuance of marketing by Lilly and Danbury. Thereafter, on December 4, 1979, FDA issued a notice of proposed rulemaking to revoke provisions for certification of adult dosage forms of "ee," pursuant to 21 U.S.C. § 357(f) (1976). The agency had earlier publicized its plan of action in the FDA Drug Bulletin. FDA continues to refuse to issue certificates to plaintiff, although it will apparently continue to certify batches of "ee" submitted by Lilly or Danbury on the ground it is required to provide notice and an opportunity for a hearing before it can remove previously approved versions of the drug from the market.

The critical legal issue joined is one of specific statutory interpretation. FDA claims that under Section 507 of the Food, Drug and Cosmetic Act, 21 U.S.C. § 357, it is not *required* to certify new versions of a previously approved antibiotic when the agency has decided the drug is unsafe and has initiated statutory procedures to remove it from the market. Barr argues that under 21 U.S.C. § 357, certification is the exclusive means for assuring that an antibiotic meets safety and efficacy standards. It therefore presses on the Court its view that once certification requirements are established, manufacturers need only comply with those requirements and may not be asked to re-establish safety or efficacy of the drug itself so long as the certification is in effect.

After careful review of the thorough submissions of both parties, the Court concludes that defendants' view must prevail. Section 507, enacted in 1945, furnished specific procedures to govern the pre-market testing of the antibiotic penicillin and its derivatives. The provision was passed in haste, to guard against possible health hazards associated with the greatly expanded commercial availability of penicillin in a peacetime economy. The need adequately to ensure safe and effective use of penicillin, then the only extant antibiotic, was a clear and overriding purpose of the legisla-

tion. *See* 21 U.S.C. § 357(a) (1976); *United States v. An Article of Drug . . . Bacto-Unidisk . . .,* 394 U.S. 784, 798, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969). *See generally* H.R.Rep. No. 702, 79th Cong., 1st Sess. (1945); S.Rep. No. 410, 79th Cong., 1st Sess. (1945).* The precise legislative provisions are therefore to be read against the background of this central objective.

■ A court must avoid overly literal statutory readings that would bring about results completely at variance with the recognized legislative purpose. If such a possibility arises, judicial reliance on legislative history is appropriate in an effort to arrive at a reasonable statutory interpretation. *See United States v. Public Utilities Comm. of Cal.,* 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020 (1953); *Aviation Consumer Action Project v. Washburn,* 175 U.S.App.D.C. 273, 535 F.2d 101, 106–07 (D.C. Cir. 1976). In this instance, the particular words of § 357(a) may appear to suggest that an applicant in plaintiff's position need simply meet standards of identity, strength, quality and purity in order to have his version of an already certified drug automatically approved for marketing. The Committee reports, however, indicate that the expedited approval procedure outlined in § 357(a) was not intended to encroach upon the agency's broad duty to make basic determinations as to safety and efficacy. Instead, the certification scheme should be read as imposing an additional control on top of safety requirements first identified seven years earlier in section 505 of the Act, 21 U.S.C.

§ 355. *See* H.R.Rep. No. 702, *supra,* at 3; S.Rep. No. 410, *supra* at 3. Moreover, a literal reading of § 357(a) would severely impair FDA's ability to prevent increased distribution of antibiotics which it has determined pose a hazard to public health. Having reassessed the safety and effectiveness of "ee," defendants have in effect concluded that the certification regulation itself is no longer an adequate guarantor for public safety. So long as the revocation proceeding is being vigorously pursued, and in light of the clear remedial purpose of the statute, the Court must not deny the agency the authority to refuse to certify new manufacturers. *See generally United States v. An Article of Drug . . . Bacto-Unidisk . . .,* 394 U.S. 784, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969); *Pfizer, Inc. v. Richardson,* 434 F.2d 536 (2d Cir. 1970).

■ Plaintiff argues further that invoking such authority in these circumstances is arbitrary and capricious, because the potential quantities involved pose no incremental health hazard and promise no substantial proliferation of "ee" capsules on the market. Even assuming this to be the case, plaintiff has not established that the agency action is arbitrary or without factual foundation. Defendants are exercising the full extent of their statutory powers to minimize and ultimately prevent a threat to public health.** In doing so they have taken a discretionary measure while pursuing the deliberative procedures required for or-

---

* Plaintiff's claim that unpublished government documents might reveal a relevant legislative intent to protect equal competition among penicillin manufacturers is without merit. Congress's goal of promoting public health is evident from the statutory language. It is also clearly expressed in the committee reports which, as aids to statutory interpretation, are the strongest indicia of congressional intent. *See generally United States v. International Union United Auto . . . Workers,* 352 U.S. 567, 585, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957); *American Airlines, Inc. v. CAB,* 125 U.S.App.D.C. 6, 365 F.2d 939, 949 (D.C. Cir. 1966). Neither the legislative language nor the reports suggest any intention to safeguard competitive positions within the industry. Plaintiff's showing fails to persuade the Court

that heretofore unpublished materials, apparently not seen by Congress as a whole, can possibly overcome or even modify the clear evidence of congressional objective. Accordingly, plaintiff's request to discover the unpublished materials is irrelevant and unnecessary.

** Although defendants possess emergency powers under the Act which may perhaps enable them to withdraw all versions of "ee" from the market, these powers are to be exercised only in rare, critical circumstances. *See* 21 U.S.C. § 355(e). Having made the responsible judgment that this is not such a situation, and attempted without success to secure voluntary removal by Lilly and Danbury, FDA is proceeding in orderly fashion under § 357(f).

derly revocation. As this is apparently the first such occurrence to arise under § 357, there can be no showing that the justification invoked is not being uniformly applied. Defendants' action here is not inconsistent with prior practice, an important distinction from the conduct challenged in *Rhodia, Inc. v. FDA*, No. 77–1616 (Sept. 18, 1979) (slip op. at 7–9).

Allowing small manufacturers in Barr's position to market "ee" capsules would simply postpone the no less difficult decision as to when an additional supply on the market poses incremental health hazards to the public. It also would complicate the administrative task of recalling all outstanding supplies of "ee" capsules should the certification regulation ultimately be withdrawn. In this context, defendants' decision to withhold all new certifications during the pendency of the revocation process is certainly rational. The scientific evidence adduced in favor of revocation, while not at this time dispositive, provides support in the record for FDA's actions to further its public health mandate. Admittedly some inequity occurs when one manufacturer is prohibited from marketing after it has satisfied the same requirements met by others who continue to sell. This result is attributable not to agency caprice but rather to the structure of the statute itself. Because formal certification entitles manufacturers to the procedural protections of § 357(f), the agency is in effect faced with an all-or-nothing choice. Its decision to opt for nothing is not arbitrary or an abuse of discretion. Plaintiff is, of course, free to intervene and participate fully in the revocation proceeding.

Defendants' motion for summary judgment is hereby granted; plaintiff's motion for summary judgment is denied. The case is dismissed. The Court will, however, consider a renewed application from plaintiff upon a responsible showing that defendants have failed vigorously to pursue revocation proceedings pursuant to § 357(f).

SO ORDERED.